UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BUSTER ERIKSEN,

     Plaintiff,

v.                           CASE NO. 3:17-cv-328-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

     Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his applications for a period of disability, disability insurance

benefits ("DIB") and supplemental security income ("SSI"). Plaintiff filed his

application for DIB and for a period of disability on May 21, 2013. (Tr. 191-92.)

On January 21, 2015, he filed his application for SSI. (Tr. 193-201.) In both

applications, Plaintiff alleged disability as of September 30, 2011. (Tr. 30.)

These claims were denied initially and on reconsideration. (*Id*.) Plaintiff

appeared at a hearing held in front of the Administrative Law Judge ("ALJ") on

June 21, 2016. (Tr. 48-86.) The ALJ rendered a decision on August 8, 2016,

finding Plaintiff not disabled from September 30, 2011, the alleged disability onset

date, through the date of the decision. (Tr. 30-40.) Plaintiff has exhausted his

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge. (Docs. 12, 14.)

available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **AFFIRMED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to

determine the reasonableness of the Commissioner's factual findings).

**II.    Discussion**

Plaintiff argues one general point on appeal.  Plaintiff argues that the
Appeals Council ("AC") erred in failing to properly analyze new evidence
submitted by Plaintiff.  Specifically, Plaintiff contends that the AC failed to
adequately consider a Mental Impairment Questionnaire ("MIQ") completed by
treating nurse practitioner, Angela White.  According to Plaintiff, the MIQ reveals
that Plaintiff's mental impairments result in various severe work-related
restrictions, rendering Plaintiff disabled as defined by the Social Security
Administration.  Plaintiff contends that the AC should have explained its reasons
for rejecting the MIQ.  Plaintiff also contends that, in any event, the AC erred in
failing to obtain the full, five (5) page MIQ.

Defendant responds that the AC properly considered the new evidence and
determined that the new evidence did not provide a basis for changing the ALJ's
determination that Plaintiff was not disabled.

**A.    The ALJ's Decision and AC Review**

The ALJ found that Plaintiff had the "following severe impairments: history
of left knee fracture, affective disorder, and alcohol addiction disorder." (Tr. 32
(internal citations omitted).)   The ALJ then determined that Plaintiff did not have
an impairment or combination of impairments that functionally equals the severity
of the listings.  (Tr. 32-36.)  Continuing on with the evaluation, the ALJ made the

following residual functional capacity ("RFC") determination:

> [T]he undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), specifically, the claimant can lift/carry/push/pull 50 pounds occasionally and 25 pounds frequently; sit, stand, walk for 6 hours each during an 8-hour workday; frequently climb ramps, stairs, ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch or crawl; avoid concentrated exposure to vibrations; limited to simple[,] routine tasks and some moderately detailed tasks; must avoid others except for occasional, brief, superficial interactions with the general public, co-workers or supervisors and cannot handle abrupt changes in the work, only gradual ones.

(Tr. 36.)  In making this finding, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible for the reasons explained in the decision.  (Tr. 39.)

With the benefit of testimony from the VE, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy.  (Tr. 39-40.)  As such, the ALJ found that Plaintiff was not disabled during the relevant time period.  (Tr. 40.)

Subsequent to the ALJ's decision, Plaintiff submitted additional evidence to the AC.[2]  The additional evidence included, *inter alia*, three pages of the MIQ.[3]

---

[2] Plaintiff apparently believes that it is unclear when the MIQ was submitted to the Social Security Administration and contends that the AC should have sought further clarification.  (Doc. 16 at 5.)  The undersigned disagrees.  A review of the record indicates
(continued...)

(Tr. 916-18.)  The AC acknowledged receiving the additional evidence, including the MIQ as submitted by Plaintiff, and added the additional evidence as exhibits to the record.  (Tr. 6-7.)  In its denial letter, the AC accepted and considered the MIQ from Ms. White, but "found that th[e] information does not provide a basis for changing the [ALJ's] decision."  (Tr. 3.)

## B.    The AC Properly Evaluated the New Evidence

Plaintiff asserts that the AC erred in failing to thoroughly analyze the MIQ. The undersigned disagrees.  The AC is not required to "give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision."  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784 (11th Cir. 2014); *see also Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261-62 (11th Cir. 2007); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011); *Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010); *Barclay v. Comm'r of Soc. Sec.*, 274 F. App'x 738, 743 (11th Cir. 2008).  Here, the AC stated that it "considered . . . the additional evidence listed on the enclosed Order of [AC]," and specified the evidence that it reviewed.  (Tr. 3, 6-7.)  The AC specifically stated that it considered the MIQ as submitted and "found that th[e] information does not

---

[2](...continued)
that the additional evidence was submitted by Plaintiff for the first time before the AC.  (Tr. 2-26, 48-49, 295-304, 916-18.)

[3] The full, five-page MIQ, attached as an exhibit to Plaintiff's memorandum, was dated May 5, 2016.  (Doc. 16-1 at 11.)  Pages four (4) and five (5) of the MIQ were not included in the record, as it seems they were not received by the AC.

provide a basis for changing the [ALJ's] decision." (Tr. 3.) The AC was not required to provide a further explanation. *See, e.g., Smith ex rel. S.N.S. v. Colvin*, No. 8:13-cv-2531-T-TGW, 2015 WL 1423111, at *9 (M.D. Fla. Mar. 27, 2015).

"When a claimant properly presents new evidence to the AC and it denies review, [the reviewing court] consider[s] the claimant's evidence anew to determine whether 'that new evidence renders the denial of benefits erroneous.'" *Burgin*, 420 F. App'x at 903 (quoting *Ingram*, 496 F.3d at 1262). In other words, Plaintiff "must show (1) that the evidence relates to the period on, or before, the date of the [ALJ's] decision; (2) that the evidence is new; (3) that the evidence is material; and (4) that the [AC] erred in deciding that the [ALJ's] findings were not contrary to the weight of all the evidence." *Smith ex rel. S.N.S.*, 2015 WL 1423111, at *10. Assuming that the first three elements have been met, Plaintiff has not shown that the AC erred in deciding that the ALJ's findings were not contrary to the weight of all the evidence.

The MIQ does not demonstrate that the ALJ's denial of benefits was erroneous. As noted by the Commissioner, Ms. White is not an "acceptable medical source" under the regulations, 20 C.F.R. §§ 404.1513(a) (2016), 416.913(a) (2016), and cannot render a "medical opinion."[4] 20 C.F.R. §§

---

[4] The Court notes that although the regulations have since changed, at the time when the ALJ made his decision, a nurse practitioner was not considered an acceptable
(continued...)

6

404.1527(a)(1), 416.927(a)(1) (defining "medical opinions" as "statements from *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions") (emphasis added). As such, the MIQ cannot be used to show the existence of an impairment. *See, e.g., Lupardus v. Comm'r of Soc. Sec.*, No. 16-16806, 2017 WL 4641077, at *4 (Oct. 17, 2017) (holding that the AC did not err in failing to properly consider a vocational services evaluation rendering impairments and noting that the vocational evaluator did not constitute an acceptable medical source and, therefore, his opinion could not be used to show the existence of an impairment). Nevertheless, evidence from "other sources" like Ms. White may be used to show the severity of impairments and how they affect the ability to work. 20 C.F.R. §§ 404.1513(d)(1) (2016), 416.913(d)(1) (2016). Even so, the MIQ does not provide a basis for changing the ALJ's decision.

Regardless of Ms. White's opinions, the ultimate responsibility for reviewing the medical evidence and assessing Plaintiff's RFC rests with the ALJ. As such, it is not necessary that the ALJ's determination of Plaintiff's RFC "match" the opinions of a medical source. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see*

---

[4](...continued)
medical source. 20 C.F.R. §§ 404.1513(d) (2016), 416.913(d)(2016).

*also Castle v. Colvin*, 557 F. App'x 849, 843 (11th Cir. 2014) (noting that an ALJ does not "play doctor" when he determines RFC without the benefit of a medical opinion); *Kopke v. Astrue*, Case No.: 8:11-cv-1197-T-30TGW, 2012 WL 4903470, at *5 (M.D. Fla. Sept. 26, 2012) ("If the plaintiff is arguing that the [ALJ's] determination of the plaintiff's [RFC] must 'match' the opinions of a medical source, that contention is unpersuasive, as the responsibility for assessing the plaintiff's [RFC] rests with the [ALJ].*")*, report and recommendation adopted in 2012 WL 4867423.

Here, the ALJ determined that Plaintiff had the RFC to perform medium work, but that he would be limited to performing simple, routine tasks and some moderately-detailed tasks, avoiding others, except occasional, brief, superficial interactions with the general public, co-workers or supervisors, and avoiding abrupt changes in the workplace. (Tr. 36.) In making this determination, the ALJ found that Plaintiff would have moderate difficulties in the areas of social functioning and concentration, persistence, and pace, and discussed the evidence supporting his findings. (Tr. 34-35.) Substantial evidence supports the ALJ's determination in this regard. Specifically, as noted by the ALJ, Amit Vijapura, M.D. reported in May 2014 that Plaintiff's affect and concentration were better, his sleep and appetite were improving, he was able to verbalize his thoughts with greater ease, and he was able to maintain alcohol limits. (Tr. 34, 805.) Plaintiff was also responding well to medication and Dr. Vijapura

recommended that Plaintiff continue with maintenance treatment.  (Tr. 805.)  In December 2014, Plaintiff further exhibited good grooming and hygiene, good eye contact and cooperative behavior.  (Tr. 814.)  Plaintiff also exhibited normal psychomotor activity, steady gait, soft speech with a regular rate, content mood, and congruent affect.  (*Id.*)  Plaintiff displayed no abnormal, involuntary movement, coherent and well-organized thought process, adequate focus and concentration, good insight and judgment, and intact memory.  (*Id.*)  Plaintiff was instructed to follow up in three (3) months.  (Tr. 817.)  On February 25, 2016, upon discharge from hospital admission with concerns over Plaintiff's medication ingestion,[5] it was reported that Plaintiff exhibited fair grooming and hygiene, good eye contact and cooperative behavior.  (Tr. 821.)  Plaintiff also exhibited normal psychomotor activity, steady gait, regular rate of speech, and normal mood.  (*Id.*)  His thought process was coherent and well-organized, his focus and concentration were adequate, his insight and judgment were fair, and his immediate and remote memory were intact.  (*Id.*)

The ALJ's RFC assessment is also supported by the opinions of state agency consultant, B. Lee Hudson, Ph.D.  Dr. Hudson reviewed the available evidence and concluded that Plaintiff had the ability to understand, remember

---

[5] It appears Plaintiff's girlfriend called 911 due to concerns about ingestion of the medication.  She indicated that Plaintiff took six (6), 400 mg tablets of Seroquel, but Plaintiff reported only taking two (2) tablets.  Plaintiff denied any suicidal ideation or any self-harm intent, and reported that he took the medication "to get high because it makes him feel better."  (Tr. 818.)

and carry out simple, and some moderately detailed, instructions, could adequately relate to others in low social demand settings, and could adapt to changes in the work setting after an initial adjustment period.  (Tr. 96-107.) Although Dr. Hudson did not examine Plaintiff, he is a "highly qualified . . . expert[] in Social Security disability evaluation."  20 C.F.R. §§ 404.1513a, 416.913a.  The ALJ generally gave significant weight to Dr. Hudson's opinions as the suggested "limitations were more than sufficient," based on the overall evidence.  (Tr. 36-37.)

It is also important to note Ms. White's opinions are inconsistent with the evidence cited above, including the opinions of an acceptable medical source, Dr. Hudson.  Based on the foregoing reasons, Plaintiff has not shown that the AC erred in deciding the evidence does not provide a basis for changing the ALJ's decision.  As such, the undersigned concludes that the ALJ's denial of benefits was not erroneous.

Plaintiff also argues that the AC erred in failing to obtain pages four (4) and five (5) of the MIQ.  The undersigned disagrees.  The claimant bears the burden of proving that he or she is disabled and is responsible for producing evidence to support his or her claim for disability.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The Court concludes that the record in this case was sufficient to give substantial support to the ALJ's (and the AC's) decision even in the

absence of the final two pages of the MIQ and, thus, the AC did not have a duty to obtain the final two pages of the report. *See, e.g., Ingram*, 496 F.3d at 1269 (holding that the adjudicator has a duty to develop the record where appropriate but is not required to obtain additional evidence as long as the record contains sufficient evidence for the adjudicator to make an informed decision). To the extent that Plaintiff requests the Court to remand the case based on the evidence submitted to the Court on appeal, Plaintiff failed to address, let alone satisfy, the criteria required for remand under sentence six of 42 U.S.C. § 405(g).[6]

## III.     Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the undersigned affirms the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question.

------------------------------

[6] To satisfy the criteria for a remand under sentence six, a claimant must establish that: (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment accordingly and

close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on January 30, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record